NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 23-242


STATE OF LOUISIANA

VERSUS

DAKOTA WAYNE SINGLETARY


\**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 95801
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

\**********

GUY E. BRADBERRY
JUDGE

\**********

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.


AFFIRMED.

**Terry W. Lambright**
**District Attorney**
**William R. Thornton**
**Assistant District Attorney**
**Thirtieth Judicial District Court**
**P.O. Box 1188**
**Leesville, LA 71496**
**(337) 239-2008**
**COUNSEL FOR:**
    **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P.O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Dakota Wayne Singletary**

**BRADBERRY, Judge.**

On September 17, 2020, the State filed a bill of information charging Defendant, Dakota Wayne Singletary, with three counts of second degree cruelty to a juvenile, all violations of La.R.S. 14:93.2.3(A)(1) and La.R.S. 14:24. Defendant pled not guilty to the charges on October 14, 2020. Nevertheless, on May 4, 2021, Defendant withdrew his plea of not guilty and entered a plea of guilty to count two of the bill of information, and the State dismissed the remaining two counts. Defendant signed a waiver of constitutional rights and plea of guilty form and a plea agreement. When the State presented a factual basis for the offense, Defendant concurred with the facts. Additionally, Defendant acknowledged and understood that the maximum penalty for the crime of second degree cruelty to a juvenile was forty years at hard labor.

He received twenty years at hard labor during his sentencing hearing held on December 20, 2022. On January 11, 2023, Defendant filed a motion to reconsider, and the trial court denied it that same day without written reasons. Defendant filed a motion for appeal and designation of record on January 26, 2023, which the trial court granted on the same date. The instant appeal was filed on April 21, 2023.

Defendant asserts only one assignment of error: the trial court imposed a constitutionally excessive sentence given the facts and circumstances of the case, requiring a diminution of his sentence. We affirm Defendant's sentence.

**FACTS**

During Defendant's plea entry proceeding, the State presented the facts of the case. These, along with the record of Defendant's co-defendant, Allen Clayton Fulks, were utilized by the trial judge when imposing its sentence. In Fulks' case, the court gave the following facts:

The facts of this case came to light following an automobile accident on July the 6th, 2020, involving this defendant, Mr. Fulks, and Dakota Wayne Singletary.

Sometime in mid-February 2020, Allen Fulks and his girlfriend, Stacy Tharpe, took in a 7-year-old female child at the request of the child's mother as she had fallen on hard times and needed to get on her feet and to secure a residence for herself and the minor child. . . . After taking the child into the home, Ms. Tharpe and Mr. Fulks spoke with Officer [Robert] Green of the Rosepine Police Department and advised him that they'd be working with the child's mother and they were making arrangements to get the child into Rosepine Elementary School. Officer Green was familiar with Ms. Tharpe as she had worked at the Dollar General Store in Rosepine. Officer Green and his chief visited the couple's home and spoke with the couple and the minor child. They advised that they needed school supplies, clothing and other things for the child. In turn, Officer Green, community members and local churches came together to raise items for the family which included money, items for their family and it also included one of the churches who bought this family a vehicle.

From time to time, Officer Green and other members of the police department would stop by the residence to check on the child and to see how things were going. This entire community was interested and concerned about the welfare of this seven-year-old child.

On June 20th of 2020, a report of possible abuse of the child was made to Officer Dylan Bergeron of Rosepine Police Department and the informant was provided -- was provided the contact information for the Department of Children and Family Services. This information was conveyed to Officer Green.

On July the 6th of 2020, at 7:49 p.m., Officer Green drove to the residence to make contact with the minor child. He was met outside on the porch by Allen Fulks and Dakota Singletary. Dakota Singletary was a friend of Allen Fulks and Stacy Tharpe and would stay at their home on occasion for unspecified periods of time. Allen Fulks told Officer Green that the minor child was with his mother and father on vacation. Officer Green explained that he would like to see her upon her return from vacation.

Officer Green soon learned of an automobile accident involving Allen Fulks and Dakota Singletary and he went to assist at 9:20 p.m. Vernon Parish Sheriff Deputy Jacob Durrett was also at the scene and both Officer Green and Deputy Durrett assisted Louisiana State Police Trooper Peter Smith. Both Allen Fulks and Dakota Singletary were transported to Beauregard Hospital by ambulance. Stacy Tharpe was noticed at the scene in another vehicle. While working on the scene, law enforcement officers were discussing the fact that the vehicle had

a child seat in it and how they were glad that there wasn't a child in the vehicle. The conversation then evolved into the fact that there is a child staying at the home who hasn't been seen in a while, which was the minor child who is the victim in this case.

While waiting on the wrecker, Allen Fulks' parents arrived at the scene. Officer Green asked the parents how the minor child was doing and told them that Allen Fulks had told him she was on vacation with them. The parents looked puzzled and advised that the minor child was not with them. The parents left the scene.

Officer Green subsequently left the scene of the accident and made contact with the individual who reported the possible abuse allegations and another party regarding the whereabouts of the minor child. They both advised that they were told that the child was with a Tristen Maricle.

Shortly thereafter, Stacy Tharpe arrived back at the scene to attempt to retrieve items from the wrecked vehicle. She was informed that only the registered owner of the vehicle would be able to retrieve items. It was noticed that she did not have a minor child matching the child's age in the vehicle. After Stacy Tharpe left the scene, Louisiana State Police Trooper Peter Smith contacted Officer Green and informed him of this.

Officer Green initiated a traffic stop out of concern as to the whereabouts of the minor child. Stacy Tharpe informed Officer Green that the child was with Allen Fulks' parents. Officer Green informed her that he knew they did not have her. At that time, Stacy Tharpe began to cry and ultimately took Officer Green to the child.

The minor child was located hiding in a bedroom of the home and was in severe pain and had been severely physically abused. An ambulance transported the child to Byrd Emergency Room for medical attention.

The parties, Stacy Tharpe, Allen Fulks and Dakota Singletary, all voluntarily answered questions during several interviews with Detective David Vance at the Vernon Parish Sheriff's Office.

Through several interviews with Stacy Tharpe, Allen Fulks and Dakota Singletary conducted by David Vance of the Vernon Parish Sheriff's Office and an interview with the minor child conducted by Brittany Evans of the Children's Advocacy Center, it was learned that between May the 1st of 2020, and July the 6th, 2020, two months . . . the child suffered ongoing abuse wherein Stacy Tharpe, Allen Fulks and Dakota Singletary each participated in different ways, but were all principals to each other's acts. Often times they would watch one

another physically abuse the child and high five one another in celebration -- high five one another in celebration.

The seven-year-old child was repeatedly struck with open and closed fists in the back of the head and mouth, thrown up into the air and onto the ground, kicked in the stomach, lashed with a belt as her head was pressed into a pillow, slapped, popped in the mouth, held by her shoulders, burned with cigarettes, punched and kneed in the vagina, choked until she fell unconscious and choked with a belt. She was forced to drink hot sauce concoctions. Her head was pushed into a sheetrock wall. She was denied food and drink, and on some occasions, denied food for three days. She was forced to take ice baths with her hands and feet zip tied behind her back. Her hair was cut off. She was lifted up by her hair and held in the air until her roots separated from her scalp causing a bald spot on the top of the head. While being choked with a belt, as the belt was being pulled above her head, she was told "you're going to die." She was repeatedly forced to hide under a bunk bed, inside an air vent for long periods of time to prevent the public or any company from seeing the severe bruises on her body. When made to hide in the air vent, she was made to wear a diaper and was left there so long she urinated and defecated on herself. She was forced to hide underneath the bed during the birthday party for Ms. Tharpe's four-year-old child. She was left alone, under the bed, while the family went out to eat Mexican food.

These parties were placed under arrest. These parties neglected the child and failed to seek medical treatment. As a result of the ongoing abuse, the minor child suffered protraction [sic], disfigurement, extreme bruising, unconsciousness, severe bodily injury, pain and repeated injuries.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

Defendant's sole assignment of error asserts that the trial court abused its discretion by imposing an excessive sentence of twenty years at hard labor.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Here, the penalty for Defendant's offense is imprisonment at hard labor for not more than forty years. La.R.S. 14:93.2.3(C). "The evidence in this case," said the trial court during Defendant's sentencing hearing, "shows, as to this particular defendant, that he was equally responsible, if not more responsible, for the injuries and torture to the seven-year-old child." The court further noted that Defendant did accept responsibility for his actions and demonstrated remorse, recognizing that he had committed a serious crime and accepting the need for punishment by a prison sentence. Additionally, Defendant testified truthfully in the trial of co-defendant, Allen Clayton Fulks. Nevertheless, since the offence was a crime of violence, the court found that a lesser sentence would deprecate the seriousness of the crime. The trial court, therefore, imposed a sentence of twenty years at hard labor, which lies in the middle range.

Defendant argues that the twenty-year sentence at hard labor is excessive for the following reasons. He was a first felony offender with no prior juvenile history, and only two misdemeanor convictions were mentioned in the record. The court made no inquiry as to why Defendant never received treatment for alcohol or substance abuse nor did it further investigate, even after noting Defendant's claim to having been treated for multiple mental illnesses, the extent of Defendant's mental health.

Since the question is whether the trial court abused its discretion and not whether another sentence would be more appropriate, we find, after considering the nature of the crime, the nature and background of Defendant, and the sentences

6

imposed in similar case, that Defendant's sentence of twenty years at hard labor is not constitutionally excessive.

*Nature of the Crime*

Defendant and his two co-defendants, over a two-month period, mistreated and neglected the victim, who at the time was seven years old. This included immersing and forcing the child to remain in ice water, striking the child on numerous parts of her body, including her vagina, all thereby causing serious bodily injury to the child.

The court found that the evidence demonstrated Defendant was equally if not more responsible than his two co-defendants, Stacy Lynn Tharpe and Allen Clayton Fulks, for the abuse of the victim.

*Nature and Background of the Defendant*

Defendant was twenty-three years old at the time of his sentencing. He was unmarried and childless. He had a tenth-grade education and had worked in construction. His medical history included testicular torsion, a removed appendix, and he took medications for high blood pressure; he claimed to have been treated for multiple mental illnesses, including bipolar disorder, ADD, ADHD, oppositional defiant disorder, intermittent explosive disorder, anxiety, depression, PTSD, and hallucinations. At the time of his sentencing, however, Defendant presented no argument regarding his medical conditions.

Defendant had a history of drug and alcohol abuse, which included the use of methamphetamines, cocaine, muscle relaxers, and pain pills. Defendant's prior criminal history included the following: In 2016, he pled guilty to disturbing the peace by intoxication, and he pled to a reduced charge of simple battery in 2019, the original charge being for domestic abuse battery. For these reasons the court found

that Defendant was "not likely to respond to probationary treatment" and was "in need of correctional treatment or a custodial environment that can be provided most effectively by being committed to an institution."

As for the instant crime, Defendant accepted responsibility for his actions and showed remorse towards the victim.

*Sentences Imposed in Similar Cases*

In *State v. J.S.,* 10-391 (La.App. 3 Cir. 11/3/10) (unpublished opinion), a first-offender, female defendant mistreated a child under the age of seventeen, resulting in a fracture of the child's cranium. She pled guilty to two counts of second degree cruelty to a juvenile, and three counts of the same offense were dismissed. The defendant was sentenced to serve thirty years at hard labor on each count, with eighteen years of each sentence suspended. The sentences were ordered to run concurrently. Additionally, she was placed on five-year probation for each count, to run consecutively at the end of her incarceration. This court affirmed the sentences, noting that the defendant was a first offender and had benefitted from a plea bargain.

The defendant in *State v. Day*, 15-564 (La.App. 3 Cir. 12/23/15), 182 So.3d 1128, first received thirty years for directly abusing her stepson through emotional cruelty and criminal physical neglect. The nine-year-old victim was found by his aunt. She found him shivering on the floor of a room furnished with only a thin mattress and a Bible. He was starving. He weighed only thirty-eight pounds. In the middle of his back was a large circular burn with a diameter of seven to eight inches. He had ligature marks on the fronts of both ankles, cuts on his head and inside his mouth and ear, bruises on his eye, lips, stomach, arms, and legs, and he had "lunago," indicating starvation. *Id.* at 1131. The abuse had occurred over many months. *Id.*

This court, however, vacated the thirty-year sentence and remanded the matter for resentencing, noting the defendant was a first felony offender without any prior history of violence and demonstrated a capacity for rehabilitation. On remand, a ten-year sentence was imposed. The defendant again appealed; however, the sentence was affirmed.

Similarly, a fifteen-year sentence was imposed on the defendant in *State v. Conway*, 50,596 (La.App. 2 Cir. 5/18/16), 196 So.3d 635, a twenty-five-year-old first offender who mistreated her two-year-old daughter. The child suffered second and third degree burns to both legs, a cut over the left eye, and other injuries to the liver, face, and head. It must be noted, however, for pleading guilty to second degree cruelty to juveniles, a sentencing cap of twenty years at hard labor was agreed upon, and the defendant's remaining charge of second degree battery was dismissed. Still, the trial court chose not to impose the twenty years within its discretion but only fifteen years. Despite her plea bargain, the defendant appealed her fifteen-year sentence, and the second circuit agreed to review the matter because she had not been specifically informed that by pleading, she was waving her right to appeal her sentence as excessive. Nevertheless, after considering the facts of the case and the benefit she had received from the plea bargain, the second circuit affirmed the sentence. *Id.*

In *State v. Dixon*, 03-160 (La.App. 3 Cir. 6/4/03), 852 So.2d 471, the defendant, while living in the same house, whipped the seven-year-old victim with an extension cord on the victim's buttocks, legs, back, and neck, causing bleeding. Additionally, the defendant hit the victim in the ankle with a walking cane, punched him in his stomach and back, and held the victim up by the ankles and dropped him on the floor. *Id.* However, the defendant at the time of his sentencing was a second

felony offender, unlike Defendant. He had been arrested for second degree murder and pled guilty to manslaughter and was also arrested on two counts of aggravated assault but found not guilty. Subsequently, the defendant was charged with aggravated battery and pled guilty to simple battery. The defendant's thirty-year sentence at hard labor was affirmed. *Id.*

## CONCLUSION

Ultimately, Defendant faced a possible sentence of one-hundred and twenty years. He had directly abused the victim for a considerable period, and he has a prior criminal history of violence. Furthermore, compared to similar cases, the imposition of a mid-range sentence of twenty years does not suggest that the trial court abused its discretion. Therefore, the sentence is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.